**RIGAKU CORPORATION, Rigaku/USA, Inc. and Rigaku Keisoku Co., Ltd., Appellants,**

v.

**FERROFLUIDICS CORPORATION, Appellee.**

**Appeal No. 86–606.**

United States Court of Appeals, Federal Circuit.

Sept. 15, 1986.

John A. Fogarty, Jr., Kenyon & Kenyon, of New York City, argued for appellants.

Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, of Boston, Mass., argued for appellee.

Before FRIEDMAN, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

Rigaku Corporation, Rigaku/USA, Inc. and Rigaku Keisoku Co., Ltd., plaintiffs in a declaratory judgment action before the United States District Court for the District of Massachusetts, seek to appeal from an interlocutory order in those proceedings. The court denied plaintiffs' motion seeking, *inter alia,* an order to prohibit the defendant, Ferrofluidics Corporation (FFC), from consulting with a particular individual, Mr. Kimio Satoh, regarding the subject matter of the suit. Rigaku asserts that the order is one denying it a preliminary injunction within the meaning of 28 U.S.C. § 1292(a)(1) and, thus, is appealable. We dismiss.

### Background

FFC and Rigaku are competitors in the sale of magnetic fluid seals. FFC charged Rigaku with patent infringement, and Rigaku brought this action, seeking a declaratory judgment of invalidity and non-infringement. FFC counterclaimed for patent infringement. At the time these proceedings began, Mr. Kimio Satoh was employed as an engineer by Rigaku. Mr. Satoh had developed and designed the magnetic fluid seals accused of infringing FFC's patents. Rigaku intended to use Mr. Satoh as its expert witness at trial. Mr.

---

Satoh terminated his employment with Rigaku in February, 1985, after agreeing to continue to serve as Rigaku's litigation consultant and expert at the trial. Shortly thereafter, he began employment with Nipon Ferrofluidics, a wholly-owned subsidiary of FFC. In August, 1985, Mr. Satoh informed Rigaku's counsel of his new employment. Per Rigaku, Mr. Satoh also admitted that he had disclosed information concerning Rigaku and this litigation to FFC's officers and in-house counsel.

In September, 1985, Rigaku filed a motion to dismiss FFC's counterclaims for patent infringement and for sanctions because of FFC's purportedly improper hiring of Mr. Satoh. Also, Rigaku sought an order, *inter alia,* prohibiting FFC from consulting with Mr. Satoh, which Rigaku asserts here was a request for a preliminary injunction.

Upon denial of Rigaku's motions, the district court directed counsel for the respective parties to submit an agreed-upon protective order regarding FFC's communications with Mr. Satoh. Counsel made an effort to draft a mutually satisfactory protective order but by October 16, 1985, it was apparent that the parties had reached an impasse. FFC filed a motion for the court to enter a protective order which it proposed. On October 21, 1985, Rigaku filed its opposition to the terms of FFC's protective order and proposed an alternative. However, on October 17, 1985, Rigaku had already noted an appeal to this court from the district court's denial of its application for purportedly injunctive relief. Upon learning of the appeal, the district court suspended the proceedings before it. Rigaku argues before us that the district court abused its discretion in refusing to enjoin FFC from consulting with Mr. Satoh.

## OPINION

The initial question which must be resolved in any appeal is whether the appellate court has jurisdiction over the order or judgment of the district court from which appeal has been taken. With certain exceptions not applicable here, the United States Court of Appeals for the Federal Circuit has been granted exclusive jurisdiction by 28 U.S.C. § 1295(a)(1) "of an appeal from a final decision of a district court of the United States ..., if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title." Thus, this court will have jurisdiction over the appeal from the final decision in the subject proceedings inasmuch as Rigaku asserts a patent claim before the district court founded on 28 U.S.C. § 1338. In addition, the United States Court of Appeals for the Federal Circuit has been granted exclusive jurisdiction by 28 U.S.C. § 1292(c)(1) "of an appeal from an interlocutory order or decree described in subsection [1292](a)" in connection with patent cases.

Under 28 U.S.C. § 1292(a)(1), interlocutory orders of district courts "granting, continuing, modifying, refusing or dissolving injunctions" may be appealed as of right. The provision for appeal of orders granting or denying injunctions finds its origin in § 7 of the Evert's Act, the Act that created the courts of appeal in 1891. Section 7 of the Evert's Act represented a departure from the final judgment rule by permitting an immediate appeal "where, upon a hearing in equity ... an injunction shall be granted or continued by an interlocutory order or decree...." Act of March 3, 1891, § 7, 26 Stat. 826, 828. The changes in the statute and its history are detailed in *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1954), and will not be repeated here. The court stated therein:

> No discussion of the underlying reasons for modifying the rule of finality appears in the legislative history, although the changes seem plainly to spring from a developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.

348 U.S. at 181, 75 S.Ct. at 252.

Relying on the above quoted statements in *Baltimore Contractors,* Rigaku argues that the test for appealability of an inter-

locutory order is whether it has serious, perhaps irreparable, consequences. Clearly that is not the entire test under section 1292(a)(1). As stated in *City of Morgantown v. Royal Insurance Co.*, 337 U.S. 254, 258, 69 S.Ct. 1067, 1069–70, 93 L.Ed. 1347 (1949), involving the appealability of an order denying a jury trial, "[m]any interlocutory orders are equally important, and may determine the outcome of the litigation, but they are not for that reason converted into injunctions." Recognizing that the denial of a jury trial would be subject to the most exacting scrutiny on appeal, the court refused to encourage piecemeal appeals by allowing that ruling to be construed as an interlocutory injunctive order. *Id.* at 258–59, 69 S.Ct. at 1069–70.

What is an injunctive order and, thus, appealable has received extensive attention in the courts of appeals and the Supreme Court since the *Baltimore Contractors* decision. Indeed, as stated in 9 *Moore's Federal Practice*, § 110.20[1] (2d ed. 1985):

> [I]ngenious counsel have found injunctions lurking in virtually every ruling that a district court can be called upon to make.
>
> \*    \*    \*    \*    \*    \*
>
> With the exception of orders [that enjoin the commencement or prosecution of other actions], it can be broadly stated that an order incidental to a pending action that does not grant [part] or all of the ultimate injunctive relief sought is not an injunction, however mandatory or prohibitory its terms, and indeed, notwithstanding the fact that it purports to enjoin.

This view is supported by the opinion of the Supreme Court in *Switzerland Cheese Association, Inc. v. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966). Recognizing a policy against piecemeal appeals, the Court stated that section 1292(a)(1) must be approached "somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." *Id.* at 24, 87 S.Ct. at 195. The test stated in *Switzerland Cheese* is the following:

Orders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view 'interlocutory' [injunctive orders] within the meaning of § 1292(a)(1). We see no other way to protect the integrity of the congressional policy against piecemeal appeals. *See generally Electronic Data Systems v. General Services Admin.*, 792 F.2d 1569 (Fed.Cir.1986) (order staying performance of allegedly void government contract is injunctive in nature).

In line with the Supreme Court's gingerly approach to section 1292(a)(1), the circuits have uniformly exercised restraint in entertaining appeals from orders regulating the course of procedures during trial, as well as those affecting proof of the merits. Thus, the denial of a motion for disqualification of counsel because of alleged conflict of interest has been held not appealable under section 1292(a)(1), *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir.1977), even when coupled with a prayer for an injunction against the party using the counsel. *Fleischer v. Phillips*, 264 F.2d 515 (2d Cir.), *cert. denied*, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1036 (1959). Appeals of evidentiary rulings are routinely dismissed, *see, e.g., Upper Mississippi Towing Corp. v. West*, 338 F.2d 823 (8th Cir.1964); as well as orders relating to taking or deferring depositions, *Time, Inc. v. Ragano*, 427 F.2d 219 (5th Cir.1970), *Whittle v. Tawes*, 343 F.2d 428 (4th Cir. 1965); for production of documents, *Kropp v. Ziebarth*, 557 F.2d 142 (8th Cir.1977); for lifting protective orders, *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949 (8th Cir.1979); and for prohibiting contact with potential class members, *Lewis v. Bloomsburg Mills, Inc.*, 608 F.2d 971 (4th Cir.1979).

The Supreme Court reiterated the restricted scope of appeal rights in *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 996–97, 67 L.Ed.2d 59 (1981):

> For an interlocutory order to be immediately appealable under § 1292(a)(1), however, a litigant must show more than that the order has the practical effect of

refusing an injunction. Because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that ... [u]nless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectively challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.

*See also Chaparral Communications, Inc. v. Boman Industries, Inc.,* 798 F.2d 456 (Fed.Cir.1986). Thus, it is clear that Rigaku's proposed "test" comes into play only after it is determined that the order is injunctive in nature.

Applying the above analysis to the facts of the instant case, the order appealed from does not fall within the scope of 28 U.S.C. § 1292(a)(1). Rigaku seeks to restrain FFC from any contact with Mr. Satoh. That type of restraint can be routinely handled by a district court through a protective order. Indeed, the filing of the present appeal interrupted the district court from ruling on the proper scope of such an order. The denial of Rigaku's motion is the type of routine trial management that a court of law must handle daily. It invokes no traditional power of a court of equity.

Rigaku's contentions that the court violated Fed.R.Civ.P. 65 in not holding an evidentiary hearing before denying a "preliminary injunction" is answered by our conclusion that the order was not an "injunction" in the sense used in the federal statutes and rules.

## CONCLUSION

Since the order appealed from is neither a final judgment nor an interlocutory order

denying an injunction,[1] we dismiss the appeal for lack of jurisdiction.

DISMISSED.

---

1. While Rigaku asserts only section 1292(a)(1) as a basis for jurisdiction, we have also considered the collateral order exception to the final judgment rule [*Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)] and find this case indistinguishable in principle from *Richardson-Merrell, Inc. v. Koller,* —— U.S. ——, 105 S.Ct. 2757, 86 L.Ed. 340 (1985).